**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PHILLIP KILLGORE, DBA Lavender Massage,

*Plaintiff-Appellant*,

v.

CITY OF SOUTH EL MONTE; COUNTY OF LOS ANGELES, a municipal corporation; G. FURUYAMA; C. SCIACCA; M. OLMEDO; C. PRESTON; D. FENDER; M. VEGA; M. VAN DINE; R. CATANO; N. TARIO; B. COMPARAN; T. HARRIS; V. PENA; O. GARCIA; A. TORRES; J. MARTINEZ; K. TAO; R. WILLIAMS; M. QUEZADA; V. VARGAS; K. RIVAS; DOES, 1–10 inclusive; B. HALL; G. LUKEHART,

*Defendants-Appellees*.

No. 20-55666

D.C. No. 2:19-cv-00442-SVW-JEM

OPINION

Appeal from the United States District Court for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted May 11, 2021
Pasadena, California

Filed July 8, 2021

Before:  John B. Owens, Ryan D. Nelson, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's dismissal, for failure to state a claim, of an action brought pursuant to 42 U.S.C. § 1983 alleging that the City of South El Monte violated plaintiff's Fourth Amendment rights when authorities, without a warrant, searched his massage business.

The panel first held that the California massage industry is a closely regulated industry and accordingly the Fourth Amendment's warrantless search exception for administrative searches of businesses applied.  Applying the factors articulated in *New York v. Burger*, 482 U.S. 691 (1987), the panel next held that the warrantless inspections were reasonable under the Fourth Amendment because (1) there was no question that curtailing prostitution and human trafficking were substantial government interests; (2) the warrant exception was necessary to further the regulatory scheme considering the potential ease of concealing violations; and (3) the City ordinance governing massage establishments and the conditional use permit

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

sufficiently restrained the City in both the time and purpose of each inspection.

## COUNSEL

Frank A. Weiser (argued), Los Angeles, California, for Plaintiff-Appellant.

D. Dennis La (argued), Aleshire & Wynder LLP, El Segundo, California; Stephen R. Onstot, and Jamie L. Traxler, Aleshire & Wynder LLP, Riverside, California; for Defendants-Appellees.

## OPINION

OWENS, Circuit Judge:

In his federal lawsuit, Phillip Killgore alleged that the City of South El Monte ("City") violated his Fourth Amendment rights when authorities, without a warrant, searched his massage business.[1] The district court dismissed his complaint for failure to state a claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[2]

---

[1] This opinion only concerns California businesses that qualify as a "massage establishment" under California Business and Professions Code section 4601(f). We render no opinion on businesses outside California or that do not qualify as a massage establishment under section 4601(f).

[2] This opinion only addresses the Fourth Amendment issue. A concurrently filed memorandum disposition resolves the remaining issues on appeal.

# I. BACKGROUND

## A. Lavender Massage, California's Regulatory System, and the Conditional Use Permit

Since 2013, Killgore owned and operated the Lavender Massage Center. While he initially ran the business under a series of City licenses, in July 2017, the City approved a conditional use permit ("CUP") for his massage establishment. The CUP set out a series of extensive conditions, including the hours of operation, the qualifications of employees, limits on altering the interior of the building, and provided that Killgore "must allow 2 inspections a year . . . to ensure compliance of all conditions of approval."

The CUP also referenced California's Massage Therapy Act ("Act"), a comprehensive certification and regulatory scheme adopted in 2014 that sets forth several requirements and authorizes local governments to establish their own regulations. Cal. Bus. & Prof. Code §§ 4600–21. The Act, which builds upon a more than 40-year-old licensing system in California, vests local governments with the power to "manage [massage] establishments in the best interests of the individual community." *Id.* § 4600.5(b).

In 2015, under the powers granted by the Act, the City enacted Ordinance No. 1195 (the "Ordinance") governing massage establishments. Its purpose was "to better control illicit operations and protect and promote the public health, safety and welfare by imposing stricter requirements on massage practitioners, therapists, and establishments." The Ordinance also mandated CUPs for massage establishments, which led to the CUP at issue in this case.

## B.  The Investigation of Lavender Massage

In August 2017, law enforcement officers began investigating Lavender Massage for prostitution and sent in an undercover officer as a patron.  The officer claimed that he was propositioned for sex, and a search warrant was executed on the business.

According to Killgore, in February 2018, City officials entered Lavender Massage on three separate occasions without consent or a court order and searched non-public areas for violations of the CUP.  Although no criminal charges were filed, the City eventually revoked Killgore's CUP for multiple violations of the Act and Ordinance.

## C.  The District Court's Dismissal of Killgore's Complaint

In January 2019, Killgore filed the instant 42 U.S.C. § 1983 action alleging that the City and several employees executed warrantless searches in violation of the Fourth Amendment.    After permitting Killgore multiple amendments to his complaint, the district court dismissed the action in a well-reasoned order.

Reviewing California's extensive regulation of the massage industry, and citing cases including *New York v. Burger*, 482 U.S. 691 (1987), and *United States v. 4,432 Mastercases of Cigarettes, More or Less*, 448 F.3d 1168 (9th Cir. 2006), the district court concluded that the massage industry in California qualified as a "closely regulated" industry, meaning that the Fourth Amendment's warrantless search exception for administrative searches of businesses applied.  The district court rejected Killgore's argument that the Supreme Court's decision in *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), which refused to extend the "closely

regulated" industry doctrine to hotels, fundamentally altered this long-established line of cases.  Killgore then appealed.

## II. DISCUSSION

### A.  Standard of Review

We review de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 572 (9th Cir. 2020).

### B.  The Fourth Amendment Permitted the Warrantless Searches of Lavender Massage

#### 1.  The Law of Closely Regulated Industries

The Fourth Amendment's general prohibition against warrantless searches extends to commercial businesses. *4,432 Mastercases of Cigarettes*, 448 F.3d at 1176.  "The United States Supreme Court, however, has carved out a limited number of contexts within which a warrant is not required," such as administrative searches of "'closely regulated' industries."  *Id.*

To determine whether an industry is "closely regulated," we look to "the pervasiveness and regularity of the . . . regulation and the effect of such regulation upon an owner's expectation of privacy."  *Id.* (citation omitted).  "We do not require a warrant in such situations because the . . . regulatory presence is sufficiently comprehensive and defined that the owner of the commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes."  *Id.* (internal quotation marks and citation omitted); *see also Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) ("Certain industries

have such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." (internal citation omitted)).

The Supreme Court has held liquor distribution, the sale of sporting weapons, stone quarrying and mining, and automobile junkyards to be "closely regulated" industries.[3] We also have held that salmon fishing, commercial fishing, family day care homes, transportation of hazardous materials, veterinary drugs, foreign trade zones, and commercial trucking are "closely regulated" industries.[4]

We are not the first court to examine whether the California massage industry falls within this exception. Over 30 years ago, a California state appellate court held that the massage industry is pervasively regulated and that an ordinance permitting warrantless inspections of massage parlors did not violate the Fourth Amendment. *Kim v. Dolch*, 219 Cal. Rptr. 248, 251 (Ct. App. 1985). Concluding "that the expectation of privacy that the owner of

---

[3] *See Colonnade Catering Corp. v. United States*, 397 U.S. 72, 74 (1970) (liquor distribution); *United States v. Biswell*, 406 U.S. 311, 316 (1972) (sale of sporting weapons); *Donovan v. Dewey*, 452 U.S. 594, 600–02 (1981) (stone quarrying and mining); *Burger*, 482 U.S. at 703–04 (automobile junkyards).

[4] *See United States v. Raub*, 637 F.2d 1205, 1209–11 (9th Cir. 1980) (salmon fishing); *Balelo v. Baldrige*, 724 F.2d 753, 765 (9th Cir. 1984) (commercial fishing); *Rush v. Obledo*, 756 F.2d 713, 714 (9th Cir. 1985) (family day care homes); *United States v. V-1 Oil Co.*, 63 F.3d 909, 911 (9th Cir. 1995) (transportation of hazardous materials); *United States v. Argent Chem. Lab'ys, Inc.*, 93 F.3d 572, 575 (9th Cir. 1996) (veterinary drugs); *4,432 Mastercases of Cigarettes*, 448 F.3d at 1176 (foreign trade zones); *United States v. Delgado*, 545 F.3d 1195, 1202 (9th Cir. 2008) (commercial trucking).

commercial property enjoys . . . differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections," the court upheld the "comprehensive" ordinance as reasonable. *Id.* at 250–51.

With the adoption of the Massage Therapy Act in 2014, which "created additional certification requirements for new massage professional applicants and impos[ed] greater statewide regulations on all certified massage therapists and practitioners," regulation of the massage industry in California now exceeds its 1985 level. The Act "completely regulate[s] the environment in which [massages are] provided" through detailed certification requirements, *see Rush*, 756 F.2d at 720, and is thus a textbook application of the "closely regulated" industry doctrine.[5]

In addition to the Act's comprehensive requirements, Killgore's business was further regulated by the City's Ordinance and the CUP conditions, both of which illustrate the City's heavy regulation of this industry and the diminished expectation of privacy of massage establishment owners. The Ordinance mirrored several of the Act's provisions, authorized reasonable inspections, and required Killgore to obtain a CUP, which the City could suspend or

---

[5] The Act provides for certification and regulation of massage therapists and practitioners and provides for the regulation of massage establishments that hire certified massage practitioners. Cal. Bus. & Prof. Code §§ 4600–21. It further provides that the "owner[s] or operator[s]" of certified massage establishments may be disciplined "for the conduct of all individuals providing massage for compensation on the business premises," *id.* § 4607, and regulates massage practitioners by, among other things, limiting the areas of the body that they may massage and their attire, *id.* § 4609.

revoke for specific violations.[6]  And under the CUP, which required compliance with the Massage Therapy Act and other state and local laws, Killgore was subject to 16 conditions that governed the hours of operation, appearance, and cleanliness of the massage establishment, and included strict reporting, hygiene, and advertising requirements.  "These numerous and specific regulations [in the Act, Ordinance, and CUP] should have provided sufficient notice to [Killgore] that [his] property . . . will from time to time be inspected by government officials." *See 4,432 Mastercases of Cigarettes*, 448 F.3d at 1177–78 (internal quotation marks and citation omitted).

Finally, a long history of government regulation is not necessary, but duration is an "important factor."  *Burger*, 482 U.S. at 701 (citation omitted).  "In *Burger*, the Supreme Court held that a regulatory scheme far less comprehensive and enacted more recently [(less than five years old)] nonetheless rendered automobile junkyards 'closely regulated.'"  *4,432 Mastercases of Cigarettes*, 448 F.3d at 1178.  Here, the California massage industry has been

---

[6] Specifically, the Ordinance requires a massage establishment to operate with a City business license and a "massage establishment permit."  The Ordinance further provides that "owners and operators of . . . massage establishment[s] are jointly and severally responsible for . . . the conduct of anyone providing massage on the premises," must provide notice when new massage practitioners are hired or terminated, and "may not record or allow recording of any massage services for compensation."  Persons performing massages must have a "current, unrevoked and unsuspended CAMTC [California Massage Therapy Council] certificate."  The Ordinance also regulates the environment in which massages are performed, including the appearance of glass windows or doors at the entrance, circumstances under which exterior doors may be locked, ventilation and minimum lighting requirements, and numerous other requirements related to massage rooms and equipment.

regulated for over 30 years.  *See Kim*, 219 Cal. Rptr. at 251. And, as noted in the Ordinance, the state imposed additional certification requirements and regulations on massage therapists and allowed local governments greater authority to regulate massage establishments.  Killgore, as the owner of a business with "such a history of government oversight," had "no reasonable expectation of privacy."  *Barlow's, Inc.*, 436 U.S. at 313.  Other appellate decisions are in accord. *See, e.g.*, *Pollard v. Cockrell*, 578 F.2d 1002, 1014 (5th Cir. 1978) (upholding a massage parlor administrative search provision because massage establishments have "a history of regulation" (citation omitted)); *see also City of Indianapolis v. Wright*, 371 N.E.2d 1298, 1302 (Ind. 1978) (upholding an ordinance regulating massage establishments in part because the industry "has a history of regulation"); *Gora v. City of Ferndale*, 576 N.W.2d 141, 147–48 (Mich. 1998) (holding the massage industry is pervasively regulated).

According to Killgore, the Supreme Court's refusal to apply the "closely regulated" industry doctrine in *Patel* prohibits its application here.[7]  Yet *Patel* dealt with a very different business – the hotel industry – one that the Supreme Court has repeatedly recognized enjoys core Fourth Amendment protections.  *See, e.g.*, *Minnesota v. Olson*, 495 U.S. 91, 99 (1990) (including guest in a "hotel room" as someone with a reasonable expectation of privacy); *Katz v. United States*, 389 U.S. 347, 359 (1967) (listing a "hotel

---

[7] Killgore also argues that like in *Patel*, the Ordinance here should fail because it does not afford massage establishments an opportunity for precompliance review.  But the *Patel* Court analyzed the ordinance in that case under the general administrative search exception to the warrant requirement after holding hotels are not "closely regulated."  *Patel*, 576 U.S. at 424–26.  Because we conclude massage establishments in California are "closely regulated," we apply the *Burger* factors, which do not require precompliance review.  *See id.*

room" as a place where a person is entitled to be "free from unreasonable searches and seizures"); *Stoner v. California*, 376 U.S. 483, 490 (1964) ("[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."); *United States v. Jeffers*, 342 U.S. 48, 51–52 (1951) (extending Fourth Amendment protection to hotel rooms). Killgore does not cite any authority suggesting that *Patel* detonated the long line of cases applying the "closely regulated" industry doctrine to additional businesses. Indeed, other courts of appeals have continued to categorize industries as "closely regulated" after *Patel*. *See, e.g.*, *Calzone v. Olson*, 931 F.3d 722, 726 (8th Cir. 2019) (dump trucks); *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 282 (6th Cir. 2018) (precious metals); *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 840 F.3d 879, 894–95 (7th Cir. 2016) (commercial trucking); *Rivera-Corraliza v. Morales*, 794 F.3d 208, 219 (1st Cir. 2015) (adult entertainment games used for gambling); *see also Cotropia v. Chapman*, 978 F.3d 282, 287 (5th Cir. 2020) (assuming pain management clinics are closely regulated). As the Sixth Circuit explained when rejecting the argument that *Patel* somehow limited this doctrine, "[w]hile *Patel* undoubtedly clarified the application of *Burger*, we do not read *Patel* as narrowly as plaintiff[] suggest[s]." *Liberty Coins*, 880 F.3d at 284.

For these reasons, we hold that the California massage industry is "closely regulated" and effectively reaffirm what has been the law in California for over 30 years.[8] *See Kim*, 219 Cal. Rptr. at 251.

---

[8] Killgore's reliance on *See v. City of Seattle*, 387 U.S. 541, 546 (1967), *Michigan v. Tyler*, 436 U.S. 499, 504–05 (1978), *Camara v.*

## 2. The Three February 2018 Searches Did Not Violate the Fourth Amendment

Under *Burger*, a warrantless inspection of a commercial business in a "closely regulated" industry is reasonable under the Fourth Amendment provided three conditions are met: (1) "there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be necessary to further [the] regulatory scheme"; and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." 482 U.S. at 702–03 (alterations in original) (internal quotation marks and citations omitted).

The district court here properly concluded that all three *Burger* requirements were met. First, there is no question that curtailing prostitution and human trafficking is a substantial government interest. Second, the warrant exception is necessary to further the regulatory scheme considering the potential ease of concealing violations. The Act, Ordinance, and CUP conditions contain a variety of internal facility requirements, including a prohibition on unlicensed massage therapists, signage requirements, hygiene standards, a prohibition on sexual activities on the premises, and restrictions on permissible attire. These sorts of violations could go easily undetected, and a warrant requirement would only frustrate the government's ability to

---

*Municipal Court of the City & County of San Francisco*, 387 U.S. 523, 538–39 (1967), *Connor v. City of Santa Ana*, 897 F.2d 1487, 1490–91 (9th Cir. 1990), and *Patel v. City of Montclair*, 798 F.3d 895, 899–900 (9th Cir. 2015), is misplaced because these cases do not involve "closely regulated" industries.

discover them.  *See 4,432 Mastercases of Cigarettes*, 448 F.3d at 1179 (noting that "advance notice of inspections could permit those violating [the regulations] 'to temporarily correct violations and frustrate enforcement efforts'" (citation omitted)); *Argent Chem. Lab'ys, Inc.*, 93 F.3d at 576 ("[F]orcing inspectors to obtain a warrant before inspection might frustrate the purpose of the Act by alerting owners to inspections.").

As to the third *Burger* requirement, Killgore argues it is not met because the Ordinance "fails sufficiently to constrain [the City officers'] discretion as to which [massage establishments] to search," "under what circumstances," and "how many times."  But the Ordinance does not give the City unfettered discretion.  The City may "conduct reasonable inspections of any massage establishment during regular business hours to ensure compliance with the Massage Therapy Act, [the Ordinance], and other applicable fire, health and safety requirements."   The City is further constrained by the CUP, which limits the hours of operation (10:00 am – 10:00 pm seven days a week), and specifies that the "business owner must allow 2 inspections a year by the Community Development Department to ensure compliance of all conditions of approval."   Although the City here conducted more than two inspections of Lavender Massage, there is nothing in the Ordinance or CUP that forbids the City from conducting necessary investigations to ensure compliance with the law.  In other words, two inspections are the minimum, not maximum, that Killgore must allow. The City was sufficiently restrained in both the time and purpose of each inspection.   The Ordinance and CUP therefore reasonably restrict the City and we hold the third *Burger* requirement is met.

Accordingly, the district court properly dismissed Killgore's Fourth Amendment claim.[9]

**AFFIRMED**.

---

[9] The district court also properly determined Killgore failed to allege with sufficient facts that the searches were conducted for a criminal purpose. And because the search falls under the "closely regulated" industry exception to the warrant requirement, the district court properly dismissed as irrelevant Killgore's argument that he did not consent to the search. *See Barlow's, Inc.*, 436 U.S. at 313 ("The businessman in a regulated industry in effect consents to the restrictions placed upon him." (citation omitted)).